UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RICKY L. MADEWELL,

      Plaintiff,                          Case No. 3:13-cv-318

vs.

COMMISSIONER OF                        District Judge Walter H. Rice
SOCIAL SECURITY,                 Magistrate Judge Michael J. Newman

      Defendant.

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

---

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").[2] This case is before the Court upon Plaintiff's Statement of Errors (doc. 11), the Commissioner's memorandum in opposition to Plaintiff's Statement of Errors (doc. 15), Plaintiff's reply memorandum (doc. 16), the administrative record (doc. 7),[3] and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Citations in this Report and Recommendation to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

[3] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

# I.

## A.    Procedural History

Plaintiff filed for DIB and SSI on September 30, 2009 alleging a disability onset date of January 31, 2009.  PageID 211-15.  Plaintiff suffers from a number of impairments including, among others, degenerative disc disease, carpal tunnel syndrome, and an anxiety disorder. PageID 50.

After initial denial of his claims, Plaintiff received a hearing before ALJ Joseph P. Donovan, Sr. on February 7, 2012.  PageID 66-98.  The ALJ issued a written decision on February 23, 2012, finding Plaintiff not "disabled."  PageID 48-60.  Specifically, the ALJ's findings were as follows:

1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2.    The claimant has not engaged in substantial gainful activity since January 31, 2009, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.    The claimant has the following severe impairments: lumbar degenerative disc disease and disc bulges; carpal tunel syndrome; borderline intellectual functioning; anxiety disorder (20 CFR 404.1520(c) 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.930(d), 416.925 and 416.926);

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[4] except

---

[4] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements.  20 C.F.R. § 404.1567.  Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.* § 404.1567(b).  An individual who can perform light work is presumed also able to perform sedentary work.  *Id.*  Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."  *Id.* § 404.1567(a).

the claimant can lift and carry 10 pounds frequently and 10 pounds occasionally; cannot lift or carry greater than 2/3rds of the day; can stand or walk for 2 to 4 hours in an 8-hour day, in 15 minute increments; can walk a distance of a block; has no limitations in sitting ability but requires an at-will sit/stand option; can frequently use hand/arm controls, use foot/leg controls, reach, and reach overhead; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, crawl, and bend; must avoid exposure to extreme temperatures[,] unprotected heights, hazardous machinery, and industrial vibrations; can perform simple, repetitive, unskilled tasks absent high volume productivity requirements; can frequently interact with supervisors, co-workers, and the general public; works better with things rather than people; cannot perform joint tasks; can frequently respond to changes in the work setting; and would be off-task 2% of the work day, with 2% loss of productivity.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born [in] . . . 1964 and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.   The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from January 31, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

PageID 50-60.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's

non-disability finding the final administrative decision of the Commissioner.  PageID 42-45.  *See*

*Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  Plaintiff then filed this timely appeal.  *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007).

    **B.    Evidence of Record**

    In his decision, the ALJ set forth a detailed recitation of Plaintiff's alleged impairments and the underlying medical evidence in this case.  PageID 53-60.  Plaintiff, in his Statement of Errors, also sets forth an extensive summary of the evidence of record.  Doc. 11 at PageID 651-58.  The Commissioner, in the memorandum in opposition, states that "[t]he medical evidence is adequately discussed in the ALJ's decision and Plaintiff's brief."  Doc. 15 at PageID 678.  Accordingly, except as otherwise noted in this Report and Recommendation, the undersigned incorporates the ALJ's recitation of the evidence as well as Plaintiff's undisputed summary of the evidentiary record.

**II.**

    **A.  Standard of Review**

    The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria.  42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007).  In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

    Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled.  *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

**B. "Disability" Defined**

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1.  Has the claimant engaged in substantial gainful activity?

2.  Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's RFC, can he or she perform his or her past relevant work?

5.  Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 416.920(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F.Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

III.

In his Statement of Errors, Plaintiff argues that the ALJ erred by failing to properly: (A) weigh the opinions of medical sources, including treating sources Dennis Bingham, M.D. and Phillip Minella, M.D., as well as testifying medical expert ("ME") Julian J. Freeman, M.D.; and (B) assess his credibility pursuant to applicable regulations. Doc. 11 at PageID 658-67.[5]

**A.    Medical Source Opinions**

The undersigned first addresses Plaintiff's contention that the ALJ failed to properly weigh medical source opinions. "[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). Treating physicians and psychologists top the hierarchy. *Id.* "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Id.* "[N]on-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id.* "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id.* (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

---

[5] In his Statement of Errors, Plaintiff actually asserts four separate alleged errors arguing that: (1) the ALJ failed to properly weigh opinions of treating sources; (2) the ALJ erroneously accepted the ME's testimony without critique; (3) the ALJ's credibility finding is not supported by substantial evidence; and (4) the ALJ's non-disability finding is not supported by substantial evidence. Doc. 11 at PageID 658. Plaintiff only separately argues the first three alleged errors. *Id.* at PageID 659-66. For purposes of this Report and Recommendation, the undersigned combines the analysis concerning the first two alleged errors and assumes that the fourth alleged error is subsumed within the first three alleged errors.

"An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 385 (6th Cir. 2013) (citation omitted) (alterations in original).  This requirement is known as the "treating physician" rule. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citations omitted).  Greater deference is given to treating source opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]"  20 C.F.R. § 404.1527(c)(2); *see also Blakely*, 581 F.3d at 406.  Thus, an ALJ must give controlling weight to a treating source if the ALJ finds that opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion."  *Blakely*, 581 F.3d at 406-07. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Id*.  Thus, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the

treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id*. at 406; *see also* 20 C.F.R. § 404.1527(c). In addition, unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions according to [these] factors, regardless of their source[.]" *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

An ALJ is not required to accept a physician's conclusion that his or her patient is "unemployable." Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a treating physician's opinion -- that his or her patient is disabled -- is not "give[n] any special significance." 20 C.F.R. § 404.1527; *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (stating that "[t]he determination of disability is ultimately the prerogative of the Commissioner, not the treating physician"). However, "[t]here remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

Here, on January 28, 2009, treating cardiologist Dr. Minella found that Plaintiff was unable to work for twelve months or more; could not stand or walk for any amount of time in an 8 hour workday; could not sit for any amount of time during a workday; was unable to lift or carry any weight for two-thirds of a workday; and was extremely limited in his ability to push, pull, bend, reach, handle, and perform repetitive foot movements. PageID 588. The ALJ gave Dr. Minella's opinion "some weight," but found it provided "limited value in terms of assessing the claimant's long-term [RFC]." PageID 56.

In analyzing Dr. Minella's opinion, the ALJ failed to mention the concept of "controlling weight" or set forth any specific analysis required in making a controlling weight determination, *i.e.*, whether or not his opinion is well-supported by medically acceptable clinical and laboratory

diagnostic techniques or consistent with the other substantial evidence in the record.  PageID 55-56.  This failure amounts to error, *see Aytch v. Comm'r of Soc. Sec.*, No. 3:13-cv-135, 2014 WL 4080075, at *4 (S.D. Ohio Aug. 19, 2014), because the lack of explanation regarding the "controlling weight [analysis] hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (referring to 20 C.F.R. § 404.1527(c)(2)) (citing *Wilson*, 378 F.3d at 544).

The undersigned also concludes that the ALJ failed to properly analyze -- and give good reasons for relying on -- Dr. Freeman's opinion.  Doc. 9 at PageID 1032.  In assessing the ME's opinion, the ALJ merely restated the entirety of the testimony and assigned the opinion "great weight" based upon the conclusory assessment that the ME "is familiar with the Social Security disability program; his findings are consistent with the objective medical evidence of record[;]" he "had the benefit of reviewing the totality of the medical evidence[;] and had the opportunity to listen to the pertinent portions of the claimant's testimony."  PageID 55.  Nowhere does the ALJ provide a specific analysis of any of the required factors set forth in 20 C.F.R. § 404.1527(e)(2)(ii) or point to any evidence within the record that "are consistent" with his opinions.  PageID 55.  Simply restating the ME's opinion and offering a conclusory assessment, without further discussion, fails to satisfy the requirement that the ALJ provide meaningful explanation of the weight given to all the medical opinion evidence.  *See* 20 C.F.R. § 404.1527(c); *see also Aytch*, 2014 WL 4080075, at *5-6 (citing *Chavez v. Astrue*, No. 12-cv-00627-LTB, 2012 WL 5250396, at *7 (D. Colo. Oct. 24, 2012) (finding the ALJ's explanation "lacking" where the ALJ merely "recapitulated" the reasons stated by the ME for disagreeing with the opinion of a treating physician and failed to "provide his reasons for according [the treating physician's] opinion the . . . weight he did").

With regard to the opinion of treating physician Dr. Bingham, standing alone, the undersigned would find that the ALJ complied with the treating physician analysis required by 20 C.F.R. § 404.1527(c), and reasonably explained the weight assigned by providing good reasons supported by substantial evidence. PageID 56. However, because the undersigned finds that the ALJ failed to comply with controlling regulations, in analyzing the opinions of Drs. Minella and Freemen, and that remand is necessary for reanalysis of those opinions, *see infra*, the undersigned recommends that the ALJ reassess Dr. Bingham's opinion anew, as well.

Accordingly, based on the foregoing, the undersigned concludes that the ALJ's non-disability finding should be reversed for failing to properly assess the weight accorded all medical opinion evidence.[6]  *See Blakley*, 581 F.3d at 409-10 (holding that "the Commissioner must follow his own procedural regulations in crediting medical opinions").

### B.    Symptoms and Credibility Assessment

Plaintiff also argues the ALJ erred in assessing his credibility with regard to his complaints of physical pain, and specifically, the ALJ's reliance on his failure to follow through with treatment and treatment recommendations. Doc. 11 at PageID 665-66. Specifically, the ALJ stated that:

> The evidence shows that the claimant has declined to follow through on treatment measures that might relieve his symptoms. In September 2009, the claimant continued to wear his back brace against [Dr. Minella's] advice. The claimant's doctor wanted to refer him for pain management, but the claimant was not interested. The doctor then declined to write him more prescriptions, and rather than enter pain management, the claimant began seeing another neurosurgeon. The claimant's physical therapy notes suggest that he choose to "live with most of the pain" rather than take his prescribed medications. The claimant's failure to follow through

---

[6] The undersigned also notes that the ALJ inadequately explained his reasons for the weight accorded to the opinions of Gerald Klyop, M.D. -- a record reviewing physician -- and Bruce Goldsmith, Ph.D. -- a record reviewing psychologist. PageID 56-57. Similar to the analysis provided in weighing Dr. Freeman's opinion, with regard to Drs. Klyop and Goldsmith, the ALJ merely restated the entirety of their opinions and assigned a specific weight without any further analysis of any evidence of record. *Id*. The undersigned recommends that, upon remand, the ALJ provide a meaningful, analysis of the weight accorded all medical opinions of record.

on prescribed treatments suggests that his conditions may not be as painful as he reports.

PageID 57-58.

"Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a); *Buxton*, 246 F.3d at 773; *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994)). "First, the ALJ will ask whether . . . there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Id*. (citation omitted).

Second, where, as here, the ALJ determines "that such an impairment exists, then he [or she] must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id*. (citations omitted); *see also* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). In considering the second part of the two-part analysis, the ALJ must consider a number of "[r]elevant factors," namely: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) other treatment undertaken to relieve symptoms; (6) other measures taken to relieve symptoms, such as lying on one's back; and (7) any other factors bearing on the limitations of the claimant to perform basic functions. 20 C.F.R. § 404.1529(c)(3); *see also Rogers*, 486 F.3d at 247.

With regard to credibility, the ALJ, and not this Court, "evaluate[s] the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247. A claimant's credibility comes into question when his or her "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence[.]" *Id*. To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the

11

claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record." *Id*. To that end, "the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility'" and such determinations "must find support in the record." *Id*. This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

Plaintiff challenges the ALJ's determination of his credibility only insofar as it concerns his statements regarding the limiting effects of his physical condition. Doc. 11 at PageID 665-66. The ALJ found Plaintiff only partially credible based, in large part, on his alleged failure "to follow through on treatment measures that might relieve his symptoms." PageID 57. Certainly, SSR 96-7p provides that "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed[.]" SSR 96-7p, 1996 WL 374186, at *7. However, such consideration is proper only if "there are no good reasons for this failure." *Id*.

In other words, an ALJ cannot discount a claimant's credibility based upon "a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id*. In this regard, the ALJ "may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." *Id*. The Commissioner's regulations give

the following examples regarding potential reasonable explanations for not seeking or complying with treatment:

> \* The individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms. The individual may be living with the symptoms, seeing a medical source only as needed for periodic evaluation and renewal of medications.
>
> \* The individual's symptoms may not be severe enough to prompt the individual to seek ongoing medical attention or may be relieved with over-the-counter medications.
>
> \* The individual may not take prescription medication because the side effects are less tolerable than the symptoms.
>
> \* The individual may be unable to afford treatment and may not have access to free or low-cost medical services.
>
> \* The individual may have been advised by a medical source that there is no further, effective treatment that can be prescribed and undertaken that would benefit the individual.
>
> \* Medical treatment may be contrary to the teaching and tenets of the individual's religion.

SSR 96-7p, 1996 WL 374186, at \*7-8.

Here, with regard to the ALJ's reliance upon Dr. Minella's note -- that Plaintiff continued to wear his back brace against Dr. Minella's advice -- the ALJ's decision fails to evidence consideration of Plaintiff's explanation for such deviation, *i.e.*, that it gives him some relief from his back pain. PageID 507. As noted in SSR 96-7p, one reasonable explanation for failing to comply with treatment is the claimant structuring his activities "so as to minimize symptoms to a tolerable level." SSR 96-7p, 1996 WL 374186, at \*7-8.

With regard to Plaintiff's disinterest in engaging in pain management treatment, the ALJ failed to consider Dr. Minella's treatment records noting that, "[t]he last time I saw [Plaintiff] . . . we tried to set him up for physical therapy and pain management but he had problems with insurance and that has never been set up." PageID 508. Failure to consider Plaintiff's insurance

difficulties in this regard, before relying on his failure to follow through with pain management treatment, is error. *See LaRiccia*, 549 F. App'x at 387 (finding the ALJ's failure to consider claimant's insurance difficulties "significant" error).

Finally, in referencing physical therapy notes suggesting that Plaintiff "chooses to 'live with most of the pain[,]'" the ALJ selectively omits the remainder of the sentence, which provides: "[H]e lives with most of the pain because he doesn't like to take the pain medication because of the way it makes him feel." PageID 596. As noted in SSR 96-7p, one reasonable explanation for failing to comply with treatment is that "[t]he individual may not take prescription medication because the side effects are less tolerable than the symptoms." SSR 96-7p, 1996 WL 374186, at *7-8.

Based on the foregoing, the record before the Court reveals that the ALJ -- contrary to the requirements of SSR 96-7p -- failed to "consider[] any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 WL 374186, at *7. The undersigned concludes that the ALJ's failure in this regard amounts to error. Because Plaintiff's purported failure to follow through with treatment and treatment recommendations was a, if not the, significant factor relied upon in the ALJ's credibility analysis, the undersigned cannot find such error harmless. As a result, the undersigned recommends that Plaintiff's assignment of error -- challenging the ALJ's credibility finding -- be sustained.

**IV.**

When, as here, the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits. Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."

*Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

Here, evidence of disability is not overwhelming. There are a number of divergent medical source opinions in the record. *See* PageID 72-80, 554-61, 525-33, 536-52 582. Accordingly, the undersigned concludes that remand for further proceedings is proper so that the ALJ can meaningfully explain the weight to be accorded all medical evidence of record, properly determine Plaintiff's credibility accordingly to applicable regulations and rulings, and determine anew Plaintiff's disability status.

## V.

**IT IS THEREFORE RECOMMENDED THAT:**

1.  The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2.  This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3.  This case be **CLOSED**.

Date:   January 13, 2015                           *s/ Michael J. Newman*
                                                   Michael J. Newman
                                                   United States Magistrate Judge

## <u>NOTICE REGARDING OBJECTIONS</u>

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).